## UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **LILIA MARIA ABBATEMATTEO** | \| |
| **Plaintiff** | \| |
| | \| |
| **Vs.** | \|  **Civil Action No. 14-cv-00226-M-LDA** |
| | \| |
| **FEDERAL HOUSING FINANCE** | \| |
| **AGENCY, FEDERAL NATIONAL** | \| |
| **MORTGAGE ASSOCIATION, AND** | \| |
| **JP MORGAN CHASE BANK, N.A.** | \| |
| **Defendants** | \| |

### PLAINTIFF'S COMBINED OBJECTION AND RESPONSE TO DEFENDANTS' COMBINED OBJECTION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS COUNT I

The Plaintiff hereby responds to the Defendants' objection to the Plaintiff's Motion for Preliminary Injunction. The Plaintiff also objects to the Defendants' Motion to Dismiss Count I, and restates and incorporates herein the arguments previously raised in Plaintiff's Memorandum in Support of the Motion for Preliminary Injunction (May 12, 2014) (hereafter, "Pl. Mem.") as well as the within memorandum of law, for the purposes of objecting to the Motion to Dismiss. The Plaintiff's Motion for Preliminary Injunction was based on Count I, which alleged that the Defendants deprived the Plaintiff of her property without due process in violation of the Fifth Amendment to the Constitution of the United States.

Apparently, the Defendants concede any argument to Plaintiff's Motion for Preliminary Injunction other than likelihood of success on the merits on Count I for deprivation of property without due process. Further, the Defendants apparently concede for the purposes of these motions that the Fifth Amendment's Due Process clause would require greater procedures than those afforded to the Plaintiff, who was deprived of her home by the Federal Housing Finance

1

Agency (hereafter, "FHFA") and the Federal National Mortgage Association (hereafter, "Fannie Mae") without a hearing through a non-judicial foreclosure sale.  The Defendants' objection to Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Dismiss are based solely on one point: that neither FHFA nor Fannie Mae are governmental actors and, therefore, are not subject to the Constitution.

As shown below, the Defendants arguments are based on a single decision of a U.S. District Court, *Herron v. Fannie Mae*, 857 F. Supp. 2d 87 (D.D.C. 2012), which is not binding authority on this Court.  Although *Herron* has been blindly followed by many federal courts, *Herron* runs afoul of at least two U.S. Supreme Court cases which require a finding that both FHFA and Fannie Mae are governmental actors whose actions must comply with the Constitution of the United States: *FDIC v. Meyer,* 510 U.S. 471 (1994) (as to FHFA) and *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995) (as to Fannie Mae).[1]  This Court should seize the opportunity to correct the error made by other federal judges and find that both FHFA and Fannie Mae are governmental actors which must comply with the U.S. Constitution. Moreover, Plaintiff has alleged sufficient facts regarding FHFA's involvement in the foreclosure of Plaintiff's home and otherwise stated a plausible claim under the Due Process Clause of the Fifth Amendment against FHFA and Fannie Mae to withstand a motion to dismiss; therefore the Court should deny the Defendants' motion to dismiss and grant Plaintiff's Motion for a Preliminary Injunction.

---

[1] See also *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001) and *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230 (1957) (per curiam), discussed *infra* at 22-27.

## STANDARD OF LAW

The standard of law for granting a motion for preliminary injunction was discussed previously.  See Pl. Mem. at 12.  When ruling on a motion to dismiss, the court must accept all well-pleaded facts alleged in the complaint as true and draw reasonable inferences in the Plaintiff's favor.  *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013).  Moreover, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.,* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  "Dismissal for failure to state a claim is appropriate 'if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013) (quoting *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011));  *See, also, Feingold v. John Hancock Life Ins. Co. (USA)*, 2014 U.S. App. LEXIS 9714, 8-9 (1st Cir. Mass. May 27, 2014).

## ARGUMENT

### I.   FHFA IS AN AGENCY OF THE FEDERAL GOVERNMENT AND WAS NOT TRANSFORMED INTO A PRIVATE ACTOR BY APPOINTING ITSELF CONSERVATOR OF FANNIE MAE.

The Defendants do not and cannot deny that FHFA is a federal agency, and made no effort to refute the holding of six cases cited by Plaintiff in support of this proposition.  See Pl. Mem. At 13-14. Clearly, the U.S. Constitution constrains the actions of a federal agency such as FHFA: "The Constitution constrains governmental action 'by whatever instruments or in whatever modes that action may be taken.' *Ex parte Virginia*, 100 U.S. 339, 346-347 (1880).

That FHFA is acting as a conservator of Fannie Mae, itself a government chartered corporation, does not transform the former into a private actor such that it can avoid acting within the constraints of the U.S. Constitution.

### A.    A Federal Agency Acting as Conservator is Subject to the Constitution

Restating its previous arguments, the Defendants state "FHFA in its capacity as conservator is not a government actor for constitutional purposes because in such circumstances the conservator 'steps into the shoes' of Fannie Mae." See Defendants [FHFA and Fannie Mae]'s Combined Opposition to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss Count I (June 12, 2014) at 17 (hereafter, "Defs. Mem.")  The Defendants rely on *Herron* and its progeny (*Syriani v. Freddie Mac Multiclass Certificates Series 3365,* No. 12-3035, 2012 WL 6200251 (C.D. Cal. July 10, 2012) and *May v. Wells Fargo Bank, N.A.*, No. 4:11-3516, 2013 WL 3207511 (S.D. Tex. June 24, 2013)), even though the plaintiffs in those cases did not assert claims against FHFA. In *Herron,* constitutional claims were not brought against FHFA but Fannie Mae's employees[2]; and after the litigation was filed FHFA intervened.  FHFA was not even a party in either *Syriani* or *May*.  The Defendants also rely on *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 86-87 (1994), a case that does not even address whether an agency such as FHFA is a government actor.

Defendants all but ignore the one Supreme Court case that addresses whether the actions of a federal agency acting as a receiver of a failed financial institution is a governmental actor and is, thus, subject to the U.S. Constitution:  *FDIC v. Meyer,* 510 U.S. 471 (1994).  The plaintiff in *Meyer,* like the plaintiff in *Herron,* was discharged from employment and sought damages for violation of his constitutional rights by asserting a constitutional tort claim authorized by *Bivens*

---

[2] The plaintiff in *Herron* asserted a *Bivens* damage claim which can be brought only against employees of a federal agency not the agency itself.  See *FDIC v. Meyer*, 510 U.S. 471, 486 (1994).

4

*v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (U.S. 1971).  The *Bivens* claim in *Meyer* was lodged directly against a federal agency acting as a receiver for a failed financial institution, the Federal Savings and Loan Insurance Corporation (FSLIC).[3]  In contrast, the plaintiff in *Herron* asserted her *Bivens* claim against Fannie Mae's employees. In *Meyer*, the plaintiff argued, and the Ninth Circuit had held, that FDIC's sue-and-be-sued clause authorized constitutional claims, including *Bivens* claims, against FDIC. FDIC argued that the waiver of sovereign immunity contained in its sue-and-be-sued clause should be limited to cases in which it would be subjected to liability as a private entity. The Supreme Court rejected FDIC's argument by distinguishing prior cases that did not involve constitutional claims and held that the FDIC's sue-and-be-sued clause waived sovereign immunity for constitutional claims. *FDIC v. Meyer*, 510 U.S. at 482-83.[4] In so holding, the Court necessarily held that FDIC was a governmental actor and, thus, that the Constitution applies to the FDIC when acting as a conservator for a private banking entity.

The Defendants' only response to *Meyer* is an excerpt of quotation from *United States v. Ely,* 142 F.3d 1113 (9th Cir. 1998) which the Defendants use to assert that *Meyer* did not determine FDIC's status as a governmental actor for the purposes of the *Ely* case.  The issue in *Ely* was not whether the FDIC was a governmental actor for purposes Constitutional claims asserted against it, but whether the Double Jeopardy clause of the Constitution was implicated where the *Ely* defendants were all sued civilly by the FDIC for the same acts that were the

---

[3]  The Federal Deposit Insurance Corporation (FDIC) was FSLIC's statutory successor.  *FDIC v. Meyer,* 510 U.S. at 474.

[4] However, the *Meyer* court rejected a *Bivens* claim against a federal agency because Meyer had valid other remedies at law available and because the court was concerned with the "potentially enormous financial burden" that could occur if federal agencies could be sued for damages for the constitutional violations of their employees. 510 U.S. at 485-486.

subject of a subsequent criminal action brought against them by the United States.  The entire

excerpt reads as follows:

> In *F.D.I.C. v. Meyer*, 510 U.S. 471, 127 L. Ed. 2d 308, 114 S. Ct. 996 (1994) it
> was assumed that the FDIC was an agency of the United States, possessing
> sovereign immunity unless that immunity was waived. *Meyer* did not purport to
> determine the status of the FDIC when, as here, taking over a failed bank as
> receiver, it sued civilly to redress wrongs done the bank and like many tort
> plaintiffs sought both compensatory and punitive damages. The FDIC in its
> corporate character of receiver "is not the federal sovereign vindicating the
> criminal law of the United States." *Heffner*, 85 F.3d at 439.
>
> *United States v. Ely*, 142 F.3d 1113, 1121 (9th Cir. Alaska 1997)

Also, the Defendants argue that *Meyer* did not "address whether a conservatorship

or receivership transforms an otherwise private actor into the government for

constitutional claims."  Def. Mem. At 13.  This argument lacks merit, because the

"stepping into the shoes" metaphor is irrelevant to the determination of whether a federal

agency acting as a receiver or conservator is a government actor for constitutional

purposes, and thus, the *Meyer* court did not use that metaphor to analyze the claim

against FDIC.  Moreover, other courts have applied the reasoning of *FDIC v. Meyer* to

FHFA and have rejected claims that FHFA's conservatorship of Fannie Mae transformed

FHFA into a private entity:

> However, the fact that a federal agency has stepped into the shoes of a person who
> would be a private plaintiff does not convert the federal agency into a private
> plaintiff and the action into a 'private action.' It simply makes it a federal agency
> standing in the shoes of a person who would be a private plaintiff. This conclusion
> is supported by the fact that courts have treated federal agencies acting in their
> capacities as receivers or conservators differently from private litigants. See, e.g.,
> *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 483, 114 S. Ct. 996, 127 L. Ed. 2d
> 308 (1994) (holding that the FDIC and its statutory predecessor could only be sued
> because they had 'waive[d] the agency's sovereign immunity'); *Stevens v. Fed.
> Deposit Ins. Corp.*, No. 11-CV-00841, 2011 U.S. Dist. LEXIS 100090, 2011 WL
> 3925087, at *3 n.3 (C.D. Cal. Aug. 25, 2011) ('This court disagrees with plaintiff's
> assertion that this immunity waiver makes FDIC something other than a bona fide
> agency of the United States; indeed, if it were not a bona fide government agency,

no waiver of immunity would have been required. Although "the FDIC as receiver 'steps into the shoes' of the failed" bank, this does not make the FDIC as a whole any less a government agency.') (quoting *O'Melveny*, 512 U.S. at 86).

*Fed. Hous. Fin. Agency v. Royal Bank of Scot. Group PLC*, 2012 U.S. Dist. LEXIS 116292, 11-13 (D. Conn. Aug. 17, 2012).

Clearly, then, *Herron* and the cases which followed *Herron's* ruling that FHFA was not a governmental actor for constitutional purposes because FHFA "stepped into the shoes" of Fannie Mae were incorrectly decided because these decisions violate the holding and reasoning of *FDIC v. Meyer*.

Since the Defendants have no reply to Plaintiff's arguments related to the *Meyer* case, they turned to cases that analyzed the conduct of the Resolution Trust Corporation (hereafter "RTC") acting as receiver, primarily *United States v. Reyes*, 87 F.3d 676 (5th Cir. Tex. 1996). However, *Reyes* did not involve the RTC, but extensively cited *United States v. Beszborn*, 21 F.3d 62 (5th Cir. 1994), cert. denied, 115 S. Ct. 330 (1994), which did.  In *Beszborn*, Universal Savings Association and First Universal Service Corporation filed a civil complaint against Beszborn, and others for RICO violations, civil conspiracy, breach of fiduciary duties, common law fraud, state statutory fraud, negligence, breach of contract, and unjust enrichment.  In May, 1990, the RTC, as conservator/receiver of Universal Savings Association, was substituted as a plaintiff in place of Universal to proceed to trial.  Therefore, the RTC, as receiver, was continuing a civil cause of action that had already been commenced by the entity that was placed into receivership.  At trial, the plaintiffs sought punitive damages against some of the defendants, but no issue of punitive damages was submitted to the jury as to Beszborn, (and some other defendants) individually.

*Beszborn* was argued before the Supreme Court's ruling in *FDIC v. Meyer,* and was decided just weeks after that ruling.  Also, *Beszborn* was decided before the Supreme Court's

ruling in *O'Melveney & Myers v. FDIC.*  The reasoning of *Beszborn* is quite similar to that in *O'Melveney,* which is appropriate given that that the RTC in *Beszborn* was pursuing a pre-receivership claim of the failed financial institution.  In effect, the *Beszborn* court applied the "stepping into the shoes" metaphor to the RTC and found that the RTC was not acting in a governmental capacity:  "Accordingly, because the RTC assumed the litigation for Universal in its private, non-governmental capacity as receiver, the suit was purely an action between private individuals. Therefore, because no damage award was pursued or imposed by the Government, the Double Jeopardy Clause has not been implicated or violated."  *United States v. Beszborn*, 21 F.3d at 62.

*Beszborn* did hold that "[i]n its capacity as receiver, the RTC stands as a private, non-governmental entity, and is not the Government for purpose of the Double Jeopardy Clause. *Id., at 68.*  Given the Supreme Court's ruling in *FDIC v. Meyer,* this holding cannot be twisted to mean that RTC was not a governmental actor for purposes of a constitutional claim asserted directly against the agency for the agency's own actions as receiver or conservator (as opposed to RTC's pursuing a pre-receivership claim of a private entity), as is the case in the instant matter.[5]

Finally, the Defendants also rely on *Hall v. American Nat'l Red Cross*, 86 F.3d 919, 921-922 (9th Cir. Cal. 1996) to hold that both Fannie Mae and FHFA are not government entities, but the Defendants misapply the case as to FHFA.[6]  The *Hall* court held that the *Lebron* test was not

---

[5] Defendants' also argue, without providing any citation, that in foreclosure actions neither Fannie Mae nor FHFA "invoke the machinery of the sovereign" since the right to foreclose non-judicially is a private contractual right under the mortgage.  Def. Mem. at 18.  This argument lacks merit, as mortgagees have a protected property interest in their homes and the government's ability to deprive mortgagees of that interest via foreclosure is protected by the Fifth Amendment to the U.S. Constitution.  Pl. Mem. at 27-29.

[6] The *Hall* case also does not affect the analysis of the government's control over Fannie Mae. The *Hall* court held that the government's authority to appoint eight of the Red Cross's fifty directors did not satisfy the *Lebron* analysis. 86 F.3d at 921-922. The *Hall* court also noted the international concerns that the United States government not have a controlling interest in the management of the Red Cross. *Id.* at 923.The government's control

satisfied as to the Red Cross because the government had not retained authority to appoint a majority of the organization's directors.  *Hall v. American Nat'l Red Cross*, 86 F.3d 919, 921-922 (9th Cir. Cal. 1996).  However, the *Lebron* decision has no bearing on FHFA's status as a governmental entity since *Lebron* only applies to government created corporations as opposed to federal agencies such as FHFA. In response to an argument that federal agencies such as FHFA do not meet the *Lebron* test, the Eighth Circuit stated: "The [appellant's] reliance on *Lebron* is misplaced, however, since in that case the Court only considered whether a private entity is a federal instrumentality 'for the purposes of the constitutional obligations of Government.' 513 U.S. at 399." *Hennepin County v. Fannie Mae*, 742 F.3d 818, 823 (8th Cir. 2014).

In conclusion, according to Supreme Court precedent directly on point, FHFA is a government actor, and every action it takes is constrained by the Constitution. That FHFA has acquired the rights and assets of Fannie Mae does not convert FHFA into a private entity.

### B.   Plaintiff Alleges Sufficient Facts to Connect FHFA's Actions to the Foreclosure of Plaintiff's Home.

The Defendants claim that "Plaintiff fails to allege any facts that show FHFA had any involvement in the foreclosure at issue in this case [and i]nstead, [] merely contends that '[s]ince Fannie Mae is a corporation controlled and operated by an agency of the United States, Fannie Mae's actions are the actions of FHFA.'" Def. Mem. At 17.  However, the Defendants were careful not to analyze or cite to the Complaint, which clearly alleges specific actions taken by FHFA that affected the foreclosure of Plaintiff's home.  Those actions include specific instructions that servicers of Fannie Mae loans foreclose on borrowers in default such as Plaintiff using non-judicial foreclosure procedures without first affording those borrowers a hearing

---

over Fannie Mae, discussed *infra* at 12-27, is significantly greater than its control over the Red Cross analyzed by the *Hall* court.

9

before depriving such borrowers of their properties through foreclosure.  Those allegations can be found in paragraphs 33 through 37 of the Complaint.

Specifically, FHFA directed Fannie Mae and its servicers concerning the standards to follow when managing delinquent mortgages. Complaint ¶ 35. FHFA also determined the specific timelines within which servicers must complete the foreclosure process for delinquent loans. Complaint ¶ 35 and Complaint, Exh. 6 at page 10. These timelines include a state by state analysis of the foreclosure procedures used by the foreclosure attorney. Complaint ¶ 36 and Complaint, Exh. 6 at page 10.  Therefore, the FHFA directed Fannie Mae and its servicers specifically to seize properties in Rhode Island using non-judicial foreclosure procedures when servicing delinquent mortgage loans without first affording the borrower a hearing.   Complaint ¶ 36-37.  These facts state a plausible claim that FHFA violated the due process clause of the Fifth Amendment.  *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d at 53.[7]

Additionally, the Defendants make little of the plenary control FHFA obtained over Fannie's Mae's operations when FHFA was appointed as conservator.   Def. Mem. at 17.  Congress empowered FHFA to become conservator of Fannie Mae and take full control of its daily operations.  After the Director of FHFA appointed FHFA as conservator of Fannie Mae, FHFA had the power to "(i) take over the assets of and operate the regulated entity with all the powers of the shareholders, the directors, and the

---

[7] Plaintiff notes that it has not yet had the opportunity to conduct discovery on FHFA and that discovery may yield additional facts evidencing FHFA's involvement in the foreclosure of Plaintiff's home. The Plaintiff expects to discover that FHFA, in its state-level analysis of foreclosures, reviewed specific account information, such as account numbers, properties, or even owners' names, and instructed Fannie Mae to foreclose on those accounts by exercising the power of sale without a pre-deprivation hearing. That expectation arises out of the quarterly reports that FHFA prepares regarding the foreclosures and foreclosure prevention activities of Fannie Mae and Freddie Mac. These reports contain significant information about foreclosures in Rhode Island, including the number of delinquent mortgages, the number of foreclosures, and the number of foreclosure prevention actions such as loan modifications or short sales. See Federal Housing Finance Agency, "Foreclosure Prevention Report, First Quarter 2014," available at www.fhfa.gov/AboutUs/Reports/ReportDocuments/Foreclosure Prevention Report_1Q14_FINAL.pdf at page 29.

officers of the regulated entity and conduct all business of the regulated entity; (ii) collect

all obligations and money due the regulated entity; (iii) perform all functions of the

regulated entity in the name of the regulated entity which are consistent with the

appointment as conservator or receiver; (iv) preserve and conserve the assets and

property of the regulated entity; and (v) provide by contract for assistance in fulfilling

any function, activity, action, or duty of the Agency as conservator or receiver." 12

U.S.C. § 4617 (b)(2)(B).

FHFA's exercise of this statutory authority is alleged in detail in paragraphs 14-19

of the Complaint.  The Plaintiff alleges that "FHFA controls all of the powers of the

shareholders and board of directors of Fannie Mae." Complaint ¶ 14, and Complaint,

Exh. 2 at page 166, 173. FHFA reconstituted Fannie Mae's Board of Directors, and the

Directors now serve as directed by and with the approval of FHFA. Complaint ¶¶ 15-16,

and Complaint, Exh. 2 at pages 169, 173. The Plaintiff alleges that "FHFA directly

controls and operates Fannie Mae with all the powers of the shareholders, directors, and

officers of Fannie Mae, owns title to all the assets of Fannie Mae, and conducts all

business of Fannie Mae." See Complaint ¶ 19 and Complaint, Exh. 2 at Page 23. By its

own statements in Exhibit 2 to the Complaint, FHFA's control of Fannie Mae is complete

and reaches to every business activity conducted by Fannie Mae. Because FHFA

exercises complete control over every action of Fannie Mae, the actions of Fannie Mae

are the actions of FHFA.

Therefore, the Plaintiff has not only pleaded sufficient facts to state a plausible

claim against FHFA, but also has demonstrated a likelihood of success that FHFA, a

federal agency, deprived the Plaintiff of her property without due process, in violation of the Fifth Amendment of the United States Constitution.

## II.   FANNIE MAE IS A GOVERNMENT ACTOR WHILE IT IS UNDER THE COMPLETE CONTROL OF FHFA.

The Defendants argue that Fannie Mae is not a government actor even though the government has exerted complete control over Fannie Mae for almost six years and will continue to exert complete control for the foreseeable future. The gravamen of the Defendants' argument that the government lacks "permanent authority" to control Fannie Mae stems from a statement in *Herron v. Fannie Mae*, 857 F. Supp. 2d 87 (D.D.C. 2012) which is unsupported by *any* legal authority: "[a]lthough the duration of the conservatorship is indefinite, FHFA's control over Fannie Mae is temporary." 857 F. Supp. 2d at 95.  As discussed below, the proper analysis under *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) to determine whether a private entity is a government entity focuses on the degree of control exercised by the government, not the duration of that control, which no one could ever predict.  Moreover, even if Fannie Mae were not found to be a government actor under *Lebron*, FHFA's indefinite control of Fannie Mae and its "pervasive entwinement" in Fannie Mae's composition and workings requires Fannie Mae's actions to be considered government actions under *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231 (1957) and *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288 (2001).

### A.   The *Lebron* Analysis Focuses on the Extent of Control, Not Its Duration.

The focus of *Lebron's* analysis, both on Amtrak and on its historical analysis of other government-created corporations, was on the extent of the control that the government had over

the company. The court considered who had the authority to appoint directors of Amtrak, as stated in Amtrak's statutory charter. Of the nine directors, the President of the United States appointed six, including the Secretary of Transportation or his designee. 513 U.S. at 385-386. Because the United States held all of Amtrak's preferred stock in exchange for subsidizing Amtrak's perennial losses, the Secretary of Transportation also selected two more directors. *Id.* The final member was selected by the other eight directors and served at their pleasure. *Id.* Amtrak's private shareholders did not vote in selecting the board of directors. Id. The court's analysis focused entirely on the extent of the government's control over the board of directors.

The Defendants do not deny that FHFA exerts complete control over Fannie Mae. However, the Defendants argue that since FHFA's control over Fannie Mae was established under the label of conservatorship, FHFA's complete control of Fannie Mae will probably end at some unspecified time in the future.  Thus, FHFA's otherwise complete control of Fannie Mae is rendered temporary and not permanent, and the control must be ignored for constitutional purposes.

The Defendant's argument ignores the FHFA's total control of Fannie Mae, and, instead, focuses on the conservatorship label that Congress used to vest that control.  Had Congress, when it authorized the director of FHFA to place Fannie Mae under FHFA's conservatorship (*see* 12 U.S.C. § 4617) instead authorized FHFA to take the same level of control over Fannie Mae — reconstituting its board of directors, taking ownership of all assets, and controlling all the daily operations of the Fannie Mae — but without using the label "conservatorship", Fannie Mae's status as a government actor under *Lebron* would be irrefutable.  The Defendants' entire argument hangs on the application of the label "conservatorship" and the unsupported implication that FHFA's total and indefinite control of Fannie Mae is merely "temporary".

The Defendants' argument is strikingly similar to the argument advanced by Amtrak in the *Lebron* case. "Amtrak claims that, whatever its relationship with the Federal Government, its charter's disclaimer of agency status prevents it from being considered a Government entity in the present case." *Lebron,* 513 U.S. at 392.   Similarly, Fannie Mae claims that whatever its relationship with the Federal Government, its special status as being under conservatorship prevents it from being considered a Government entity in the present case. The *Lebron* court called this argument "misplaced" and held:

> The Constitution constrains governmental action "by whatever instruments or in whatever modes that action may be taken." *Ex parte Virginia*, 100 U.S. 339, 346-347, 25 L. Ed. 676 (1880). **And under whatever congressional label.** As we said of the Reconstruction Finance Corporation in deciding whether debts owed it were owed the United States Government: "That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is . . . ." *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539, 90 L. Ed. 835, 66 S. Ct. 729 (1946)."

> *Id., at* 392-393 (Emphasis added).

The Defendants cannot point to **any** Supreme Court precedent holding that a government agency's complete control over a corporation using the conservatorship form defeats a finding of "permanent authority" under *Lebron*.  The twenty or so cases decided by the federal courts, including the Sixth Circuit's decision in *Mik v. Federal Home Loan Mortgage Corporation,* all rely on *Herron* or cases in which *Herron* was relied upon.[8]  While the *Mik* decision does cite *Lebron*, its cursory analysis of *Lebron* consists of a few sentences, and cites the pre-conservatorship decision of the Ninth Circuit in *American Bankers Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 75 F.3d 1401 (9th Cir. 1996) to support its holding that Freddie Mac was not a governmental entity for purposes of the U.S. Constitution. Ignoring the full extent of FHFA's control over its conserved entities, the court stated that "the government does not

---

[8] An analysis of those twenty cases pointing to *Herron* is found in Appendix 1 of this Memorandum.

14

control the operation of Freddie Mac through its appointees." *Mik,* 743 F.3d at 168. *Mik* also

cited the post conservatorship decision in *Syriani v. Freddie Mac Multiclass Certificates,*

*Series* 3365, No. CV 12-3035, 2012 U.S. Dist. LEXIS 179863, 2012 WL 6200251, at *4 (C.D.

Cal. July 10, 2012), which relies on *Herron* for its holding that FHFA's conservatorship of

Freddie Mac did not transform Freddie Mac into a governmental entity.

Neither *Herron* nor its progeny relied on by the Defendants considered the apparently

unanimous scholarly opinion that, post-conservatorship, actions by Fannie Mae and Freddie Mac

are federal actions subject to constitutional constraints. *See, e.g.,* Frank S. Alexander, Georgia

Real Estate Finance and Foreclosure Law, § 13.2(b) (3d ed. 2012) (attached as Exhibit 1) ("With

[FHFA's] conservatorship placing both entities under government control, both element of the

*Lebron* test for a federal instrumentality appear to be met for Fannie Mae and Freddie Mac . . .

."); Grant S. Nelson, Confronting the Mortgage Meltdown: A Brief for the Federalization of

State Mortgage Foreclosure Law, 37 Pepp. L. Rev. 583, 616 (2010) (attached as Exhibit 2) ("It

seems clear that at the present time, Fannie Mae and Freddie Mac satisfy the second prong of the

*Lebron* test in that the federal government controls each entity for the forseeable future.") *See,*

*also,* Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 7.28 at 689 (5th ed. 2007)

(attached as Exhibit 3) ("If the foreclosing mortgagee is a direct federal instrumentality, then the

requisite 'federal action' exists and a court will apply fifth amendment due process standards to

test the constitutionality of the foreclosure.")

Before *Herron* was decided, the federal courts that decided whether a private entity was a

governmental actor for purposes of complying with the U.S. Constitution focused on the degree

of government control of that entity, and not the permanence of that control. The soundness of

15

that approach is endorsed by the U.S. Supreme Court itself, which restated the holding of

*Lebron,* without reference to permanence, as follows:

> [T]he character of a legal entity is determined neither by its expressly private
> characterization in statutory law, nor by the failure of the law to acknowledge the
> entity's inseparability from recognized government officials or agencies.
> **Lebron** v. **National Railroad Passenger Corporation**, 513 U.S. 374, 130 L. Ed.
> 2d 902, 115 S. Ct. 961 (1995), held that Amtrak was the Government for
> constitutional purposes, regardless of its congressional designation as private; it
> was organized under federal law to attain governmental **objectives and was
> directed and controlled by federal appointees.**
>
> *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288, 296 (U.S.
> 2001) (emphasis added).

Further support that *Lebron* focuses on the degree of control and not the duration of that

control is found in *Becker v. Gallaudet Univ.*, 66 F. Supp. 2d 16 (D.D.C. 1999), the same U.S.

District Court that decided *Herron.*  The *Becker* court evaluated whether Gallaudet University,

which was incorporated by an act of Congress, was a governmental actor for purposes of the

First and Fifth Amendments.  At the time the Board of Trustees of Gallaudet University was

comprised of twenty-one members, three of whom were "public members" appointed by

Congress and the other 18 are "elected by the Board of Trustees, who on the effective date of this

Act [August 4, 1986] shall include those individuals serving as nonpublic members of the Board

of Trustees of Gallaudet College immediately prior to such date." *Id.*, at 19.  Although the

*Becker* court ruled that Gallaudet University was not a governmental actor, the court observed

that *Lebron* required the Court to do more than a formalistic evaluation of the composition of the

governing body of the University. Rather, the court should determine the degree of government

direction and control:

> Under a literal translation of the *Lebron* holding to the three-part test, the
> predominately private composition of Gallaudet's Board of Trustees would be
> dispositive. This Court is unconvinced, however, that congressional appointment
> of a majority of the directors should be a *sine qua non* for a finding of federal

16

action. **The focus of *Lebron* and its progeny is on congressional direction and control, and although the composition of the Board of Trustees is one indicator of the extent of federal control, it should not be the sole factor.** The composition of Gallaudet's Board would be immaterial to the question of federal action if, for instance, Congress enacted legislation that stripped the Board of its authority to manage and set policy for the University. In such a case the court would examine the governing structure of the University from a functional perspective, as opposed to comparing the number of public and private members on the Board. *See Lebron*, 513 U.S. at 397 ("It surely cannot be that government, state or federal, is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form.").

*Id.,* at 21 n.6 (D.D.C. 1999) (emphasis added).

The "functional perspective" urged by the *Becker* court has particular relevance here. By enacting HERA, Congress effectively stripped the Board of Directors of Fannie Mae of its authority to manage and set policy and handed those functions over to FHFA once the director of FHFA appointed itself as conservator of Fannie Mae. Functionally, FHFA controls every action of Fannie Mae; thus FHFA cannot "evade the most solemn obligations imposed in the Constitution by simply resorting to the [conservatorship] form." *Id.,* (citing *Lebron,* 513 U.S. at 397).

Similarly, in *Horvath v. Westport Library Ass'n*, 362 F.3d 147 (2d Cir. Conn. 2004), the Second Circuit followed *Becker* and interpreted the "permanent authority" prong of the *Lebron* test as requiring more than merely counting the number of public appointed members to the governing body of the private entity in question, a public library. In *Horvath* seven of the fourteen voting members of the library's Board of Trustees were appointed by by the Representative Town Meeting of the Town of Westport and the remaining seven members were appointed by the Board of Trustees themselves. In ruling that the library was a governmental actor the *Horvath* court observed:

As to the third element, it is correct that only one-half, and not a majority, of the Library's trustees are appointed by the Town. However, we do not believe that

17

this precludes a finding that the third element of *Lebron* has been satisfied. *See, e.g., Gorman-Bakos v. Cornell Coop. Extension of Schenectady County,* 252 F.3d 545, 552-53 (2d Cir. 2001) (stating in dicta that State-created and funded agricultural cooperative was a state actor even though only two of its ten board members were government officials); *Becker v. Gallaudet Univ.,* 66 F. Supp. 2d 16, 21 n.6 (D.D.C. 1999) (failure to fully satisfy third prong of standard should not preclude a finding of state action if the actual degree of public control is substantial). The additional fact that only a little more than a tenth of the Library's funding comes from sources other than the Town convinces us that **the Town maintains sufficient control over the Library to qualify it as a state actor for the purposes of Horvath's claim.**

*Id.*, at 153-54 (emphasis added).

Finally, in *Sotack v. Pennsylvania Property & Cas. Ins. Guaranty Assoc.*, 104 F. Supp. 2d 471 (E.D. Pa. 2000) the Court ruled that the Pennsylvania Property and Casualty Insurance Guaranty Association ("PPCIGA"), a mandatory association of all property and casualty insurance carriers that are authorized to write policies in Pennsylvania created by legislative enactment, was a governmental actor.  When a member insurance carrier becomes insolvent, PPCIGA steps into the shoes of the insolvent carrier and provides a "last resort" remedy for "covered claims."  *Id.,* at 474.  The members of PPCIGA's governing body are nominated by the insurance carriers and are approved by the Commissioner of the Department of Insurance of the Commonwealth of Pennsylvania ("Commissioner").  Moreover, the legislative enactment provides for extensive supervision and regulation of PPCIGA by the Commissioner.   Even though the members of PPCIGA's governing body were not appointed by a governmental authority the *Sostack* court found, nonetheless that *Lebron's* "permanent authority" requirement was satisfied due to the extensive control of PPCIGA by the Commissioner:

PPCIGA satisfies the last *Lebron* requirement, that the state controls the entity. The Commonwealth of Pennsylvania controls almost every aspect of the operations of PPCIGA. The Commissioner has virtually limitless authority to supervise and regulate PPCIGA at all times.   . . . Beyond the comprehensive supervision over PPCIGA, the Commissioner can control the composition of the Board. The Commissioner must approve each appointment to PPCIGA's Board of

Directors.  Under certain circumstances, such as when a Director's seat remains vacant for 15 days, the Commissioner has the authority to appoint Directors. **Although the members of the Board are typically not appointed by the government, the state has ultimate control over the composition of the Board. In addition, the Commissioner retains almost complete authority over the operations of PPCIGA.**

*Id.,* at 478-479 (citations omitted) (emphasis added).

The absence of any citation by the *Herron* court to any legal authority in the holding relied upon by the Defendants further evidences that the *Herron* court did not interpret *Lebron* according to established precedent. As noted above, the Defendants rely on a wholly unsupported statement in *Herron* that says, "[a]lthough the duration of the conservatorship is indefinite, FHFA's control over Fannie Mae is temporary." *Herron,* 857 F. Supp. 2d at 95. Similarly, the *Herron's* Court's statement that "[b]ecause conservatorship is by nature temporary, the government has not acceded to permanent control over the entity and Fannie Mae remains a private corporation" also lacks any citation to legal authority. *Id.* The District Court in *Herron* eviscerates the Supreme Court's holding in *Lebron* – that a corporation is a government entity if the government retained "permanent authority to appoint a majority of the directors of that corporation" *Lebron,* 513 U.S. at 400. The *Herron* court ends the analysis at the word "permanent," ignoring the *Lebron* court's lengthy analysis on the extent of government control, which is reviewed above. The *Herron* court, like the Defendants, admitted that FHFA had complete control over Fannie Mae, but held, without citation to *Lebron* or any other authority that "[b]ecause conservatorship is by nature temporary, the government has not acceded to permanent control over the entity and Fannie Mae remains a private corporation." *Herron*, 857 F.Supp at 96.[9]

---

[9] Finally, as expected the Defendants misapply the "stepping into the shoes" analogy used in *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (U.S. 1994), to argue that Fannie Mae's actions under the government conservatorship are exempt from the constitution. As discussed in the Plaintiff's memorandum at pages 23-26, and

In response to Plaintiff's argument that the *Herron* decision lacks any reference to the *Lebron* decision or any other authority to support its ruling, the Defendants claim that "Plaintiff's argument ignored *Lebron's* holding that indefinite control of the type FHFA as Conservator exercises over Fannie Mae does not constitute permanent control." Defs. Mem. at 10. The Defendants, without quoting any language in the *Lebron* decision to support this claim refers the Court to page 398 of the *Lebron* decision. However, there is nothing on page 398 to suggest that indefinite control constitutes permanent control. To the contrary, the *Lebron* court on page 398 reiterates that Amtrak is a federal actor because it is under the direction and control of federal governmental appointees, and that the government's control of Amtrak was not "temporary" because the government did not obtain control over Amtrak by virtue of owning Amtrak's stock:

> Amtrak is not merely in the temporary control of the Government (as a private corporation whose stock comes into federal ownership might be); it is established and organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal governmental appointees. It is in that respect no different from the so-called independent regulatory agencies such as the Federal Communications Commission or the Securities Exchange Commission [or FHFA], which are run by Presidential appointees with fixed terms.

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. at 398 (U.S. 1995).

Under the *Herron* court's analysis, even Amtrak would have been found not to be considered a government actor because arguably, the government's control of Amtrak would not last forever. Amtrak's charter had a provision calling for the termination of the government's interest; See *Lebron*, 513 U.S. at 399 n.5; however, the court could not reconcile that vague provision with Amtrak's current corporate structure. Moreover, Congress also expressly reserved

herein, *supra*, at 4-7, the "stepping into the shoes" analogy does not govern the determination of whether a federal agency such as FHFA or an entity under government conservatorship such as Fannie Mae is a governmental actor for purposes of constitutional claims.

to itself the "right to repeal, alter, or amend this chapter at any time. 45 U.S.C. § 541." *Lebron,*
513 U.S. at 398. If the reasoning of the *Herron* court be followed, then the vague termination
provision and the reservation of the right to repeal, alter or amend, could constitute indefinite
control, not permanent control. The *Herron* court would likely disregard the government's
control over Amtrak because without a clear statement of Congressional intent that the control
over Amtrak be permanent, the government's control could only be considered indefinite. That
reasoning is contrary to *Lebron*, which specifically denounced reliance on congressional labels
and statements of intention. *Lebron,* 513 U.S. at 392 ("it is not for Congress to make the final
determination of Amtrak's status as a Government entity for purposes of determining the
constitutional rights of citizens affected by its actions").

The Defendants further contend that FHFA's conservatorship should be considered
temporary because HERA provides a statutory purpose of "reorganizing, rehabilitating, or
winding up the affairs of a regulated entity," 12 U.S.C. § 4617 (a)(2), and that purpose, the
Defendants argue, "mandates that the Conservator bring the conservatorship to a close." Defs.
Mem. at 8.  However, the statute cited by the Defendants does not mandate that the
conservatorship be brought to a close. The statute permits the conservator to reorganize or
rehabilitate the regulated entities, which could be, and have been, long term endeavors. More
importantly, this statutory purpose does not contain a requirement that the conservatorship be
terminated, other than by FHFA's being appointed receiver of Fannie Mae.

In fact, the statutory purpose of rehabilitating Fannie Mae has already been achieved. As
demonstrated by its 10-K statements attached to the complaint, Fannie Mae is now highly
profitable, and has a positive net worth. Complaint, ¶¶ 25-26, Exh. 2 at page 2, 10. Fannie Mae
has paid $121 billion to the Treasury, which provided $116.1 billion of capital to Fannie Mae

under the Senior Preferred Stock Purchase Agreements. Complaint ¶26. Nevertheless, despite

Fannie Mae having been successfully rehabilitated, the government conservatorship continues

for the foreseeable future. If the statutory purpose of "reorganizing, rehabilitating, or winding

up" Fannie Mae were to be considered a definite termination provision, then the conservatorship

should have already ended. Clearly, this statutory purpose is not a termination provision and does

not make the conservatorship temporary.

In a strict sense of the word, nothing is permanent. Even the Constitution of the United

States is not permanent, as the Constitution, itself, can be amended. Like the Articles of

Confederation, the Constitution could be replaced by different agreement among the states.

Holding that indefinite control does not constitute permanent control is illogical and inconsistent

with the reasoning of *Lebron*. Therefore, FHFA's complete and indefinite control over Fannie

Mae satisfies the second prong of the *Lebron* test -- "permanent authority to appoint a majority

of directors." The argument advanced by the Defendants, relying on *Herron*, conflicts with the

reasoning of the *Lebron* court and thus should be rejected by this Court.

### B.     Even if FHFA's Complete and Indefinite Control does not Render Fannie Mae a Governmental Actor Under *Lebron*, Fannie Mae is, Nonetheless, a Governmental Actor Under Other Supreme Court Precedent.

Even if the court were to hold that under *Lebron*, FHFA's indefinite and complete control

of Fannie Mae does not rise to the level of "permanent authority" to appoint a majority of Fannie

Mae's Board of Directors, FHFA's indefinite and complete control renders Fannie Mae a

governmental actor under other U.S. Supreme Court precedent holding that a private entity is a

governmental actor for constitutional purposes.[10]

---

[10] Although Plaintiff's Motion for a Preliminary Injunction relied on *Lebron* for her Fifth Amendment claim against Fannie Mae, she may offer alternative legal theories for demonstrating Fannie Mae is a governmental actor to defeat Defendants Motion to Dismiss. *See United States ex rel. Hutcheson v. Blackstone Med., Inc*., 647

As Justice Scalia writing for the majority in *Lebron* observed, "[i]t is fair to say that "our cases deciding when private action might be deemed that of the state have not been a model of consistency." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. at 378 (citing *Edmonson* v. *Leesville Concrete Co.*, 500 U.S. 614, 632, (1991) (O'CONNOR, J., dissenting)).   Before launching into its decision regarding the status of Amtrak, the *Lebron* court cited a number of Supreme Court cases which held that "actions of private entities can sometimes be regarded as governmental action for constitutional purposes" including: *San Francisco Arts & Athletics, Inc.* v. *United States Olympic Comm.*, 483 U.S. 522, 546, (1987); *Blum* v. *Yaretsky*, 457 U.S. 991, 1004, (1982); *Moose Lodge No. 107* v. *Irvis*, 407 U.S. 163, 172 (1972); and *Burton* v. *Wilmington Parking Authority*, 365 U.S. 715, 6 L. Ed. 2d 45, 81 S. Ct. 856 (1961). The doctrinal differences in some of those cases were explained in a subsequent Supreme Court decision, *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001) a case in which a not-for-profit corporation organized to regulate interscholastic sport among public and private high schools in the state was found to be a governmental actor.   However, before explaining those doctrinal differences the *Brentwood* court declared there is no singular way to approach the question of whether a private entity is a governmental actor for purposes of the constitution:

> What [actions of a private entity are] . . . fairly attributable [to the government] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.
>
> *Id., at* 295-296.

---

F.3d 377, 384 (1st Cir. Mass. 2011) (A complaint can avoid dismissal if it alleges facts to sustain recovery under some actionable legal theory.)

The *Brentwood* court then went on to describe the various approaches the Supreme Court

has taken to determine whether a private entity is a governmental actor for purposes of

the Constitution:

> Our cases have identified a host of facts that can bear on the fairness of such an
> attribution. We have, for example, held that a challenged activity may be state
> action when it results from the State's exercise of "coercive power," when the
> State provides "significant encouragement, either overt or covert," or when a
> private actor operates as a "willful participant in joint activity with the State or its
> agents," . . . . We have treated a nominally private entity as a state actor when it is
> controlled by an "agency of the State," when it has been delegated a public
> function by the State, when it is "entwined with governmental policies" or when
> government is "entwined in [its] management or control,"

*Id.,* at 296 (citations omitted).[11]

Of these approaches, at least two are applicable to the case at hand.  The first applicable

approach is where "a nominally private entity as a state actor when it is controlled by an 'agency

of the State . . . .'" *Pennsylvania* v. *Board of Directors of City Trusts of Philadelphia*, 353 U.S.

230, 231, (1957) *(per curiam).*  In the *Pennsylvania* case, the Supreme Court ruled that the

privately endowed Gerard College was a state actor and enforcement of its private founder's

limitation of admission to whites was attributable to the State, because, consistent with the terms

of the settlor's gift, the college's board of directors was a state agency established by state law.

Although this case was decided before *Lebron,* it is still good law (since it was cited in addition

---

[11] The First Circuit has made similar observations about the lack of doctrinal clarity and listed a similar
range of approaches to deciding whether a private entity is a governmental actor:

> Yet under several doctrines, acts by a nominally private entity may comprise state action--e.g., if,
> with respect to the activity at issue, the private entity is engaged in a traditionally exclusive public
> function; is "entwined" with the government; is subject to governmental coercion or encouragement;
> or is willingly engaged in joint action with the government. Brentwood Acad. v. Tenn. Secondary
> Sch. Athletic Ass'n, 531 U.S. 288, 295-96, 148 L. Ed. 2d 807, 121 S. Ct. 924 (2001). The doctrines
> are too generally phrased to be self-executing: the cases are sensitive to fact situations and lack neat
> consistency. *See id.*

*Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002)

to *Lebron* by the *Brentwood* court).[12]  There is no requirement set forth in the *Pennsylvania* case

that the government's control be permanent; control, itself, was sufficient.  Therefore, given that

Fannie Mae's board of directors was completely replaced by FHFA pursuant to authority granted

to it by an act of Congress, Fannie Mae is controlled by an agency of the government, and is

thus, a governmental actor under *Pennsylvania* v. *Board of Directors of City Trusts of*

*Philadelphia.*

The second applicable approach is what has become to be known as the "entwinement"

theory, first enunciated in *Evans v. Newton*, 382 U.S. 296 (1966), and expanded upon in

*Brentwood.*  The *Evans* case held that private trustees to whom a city had transferred a park were

nonetheless state actors barred from enforcing racial segregation, since the park served the public

purpose of providing community recreation, and "the municipality remained entwined in [its]

management [and] control . . . ." *Id.,* at 301.  Building on its ruling in *Evans,* the *Brentwood* court

concluded that the non-profit athletic association was a governmental actor since "[t]he

nominally private character of the Association is overborne by the pervasive entwinement of

public institutions and public officials in its composition and workings, and there is no

substantial reason to claim unfairness in applying constitutional standards to it."  *Brentwood*

*Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001).  As with its ruling in the

*Pennsylvania* case, there is no requirement in either *Evans* or *Brentwood* that the entwinement of

public institutions and public officials in the operation of the private entity be permanent:

---

[12] Significantly, the *Brentwood* court's description of its ruling in *Lebron* makes no mention of the word "permanent" and only mentions control of the entity by the government:  "[Amtrak] was organized under federal law to attain governmental objectives and was directed and controlled by federal appointees." *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288, 296 (U.S. 2001).

25

government control is all that is required for a finding that the private entity is a governmental actor for constitutional purposes.[13]

Fannie Mae is unmistakably entwined with the government. Fannie Mae is "entwined with governmental policies." The Plaintiff alleges that Fannie Mae is "organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing, and managing and liquidating federally owned mortgage portfolios in an orderly manner, with a minimum of adverse effect upon the residential mortgage market and minimum loss to the Federal Government. See 12 U.S.C. § 1716." Complaint, ¶ 9.

Fannie Mae is also "entwined with governmental management." The Plaintiff alleges that FHFA reconstituted Fannie Mae's Board of Directors, and the Directors now serve as directed by and with the approval of FHFA. Complaint ¶¶ 15-16, and Complaint, Exh. 2 at pages 169, 173. The Plaintiff alleges that "FHFA directly controls and operates Fannie Mae with all the powers of the shareholders, directors, and officers of Fannie Mae, owns title to all the assets of Fannie Mae, and conducts all business of Fannie Mae." See Complaint ¶ 19 and Complaint, Exh. 2 at Page 23.

---

[13] The *Herron* court also considered whether Fannie Mae was entwined with the government under *Brentwood;* but, in four brief sentences dismissed its application to FHFA's conservatorship relying, incorrectly, on the "stepping into the shoes" metaphor enunciated in *O'Melveney. See,* Discussion, *supra,* at 4-7.

Lastly, Plaintiff notes that some courts have resolved cases involving a close question of whether a private entity is a government actor on policy grounds favoring a finding of governmental action:

> [T]he court notes a significant policy reason for resolving close questions of this nature in favor of a finding of state action.   As the Supreme Court noted in explaining its decision in *Lebron*,"the constitution constrains governmental action 'by whatever instruments or in whatever modes that action may be taken.'" *Lebron* 130 L. Ed. 2d at 918. The court went on to explain "it surely cannot be that government, state or federal, is able to evade the most solemn obligations imposed by the constitution by simply resorting to corporate form." *Id.* at 921.

*Clark v. County of Placer*, 923 F. Supp. 1278, 1284 (E.D. Cal. 1996).

There is ample Supreme Court precedent establishing that the indefinite and complete control FHFA obtained over Fannie Mae by virtue of its conservatorship over the latter renders Fannie Mae a governmental actor.  Having refuted the Defendants' claim to the contrary, the Court should grant preliminary relief Plaintiff seeks in her motion as to Fannie Mae, and deny Fannie Mae's motion to dismiss Count I.

## CONCLUSION

FHFA is a federal agency and must obey the Constitution. That FHFA is acting as conservator of Fannie Mae does not transform the former into a private actor.  FHFA's conservatorship status does not exempt or otherwise immunize FHFA from complying with the mandates of the Constitution. The Plaintiff alleges that FHFA was directly involved in the foreclosure process by directing Fannie Mae and its servicers to use non-judicial foreclosure procedures and deprive persons like the Plaintiff of her property without due process.

Fannie Mae is under the complete control of its government conservator, FHFA, and that control is complete, indefinite, and thus, permanent. That FHFA's control of Fannie Mae is

labeled a conservatorship is of no consequence to its status as a governmental actor. Because the government's control is complete and indefinite in duration, Fannie Mae is a governmental actor and its actions are subject to the Constitution.

Wherefore, Plaintiff respectfully requests the Court to grant Plaintiff's Motion for Preliminary Injunction and deny the Defendants' Motion to Dismiss Count I, because the Plaintiff has established a likelihood of success on the merits and has stated a plausible claim under the Fifth Amendment against both Defendants. Further the Plaintiff respectfully requests the Court to enter an order enjoining the Defendants from evicting the Plaintiff, her family, or her tenants from the Property, or transferring title to the Property, pending further order of the Court.

Respectfully submitted,

Lilia Maria Abbatematteo
By her Attorneys,

/s/ Jeffrey C. Ankrom
Jeffrey C. Ankrom, Esq. (#7663)
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI, 02903
(401) 274-2652, ext. 138
(401) 453-0310 fax
jankrom@rils.org

/s/ Steven Fischbach
Steven Fischbach, Esq. (#3259)
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI, 02903
(401) 274-2652, ext. 182
(401) 453-0310 fax
sfischbach@rils.org

Dated:  June 30, 2014

28

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on June 30, 2014, I served a copy of the foregoing Objection

and Response through the court's electronic filing system to the following counsel:

For FHFA and Fannie Mae:
Maura K. McKelvey, Esq.
Samuel Bodurtha, Esq.
Hinshaw & Culbertson, LLP
321 South Main Street, Suite 301
Providence, RI 02903

Asim Varma
Howard N. Cayne
Michael A. F. Johnson
Arnold & Porter, LLP
555 12th Street, NW
Washington, DC 20004

For JP Morgan Chase Bank, N.A.
Todd Holbrook, Esq.
Wayne George, Esq.
Morgan Lewis & Bockius LLP
225 Franklin Street, 16th Floor
Boston, MA 02110-4104

/s/ Jeffrey C. Ankrom, Esq.
Jeffrey C. Ankrom, Esq.

APPENDIX 1

The chart below analyzes the twenty cases in addition to *Herron v. Fannie Mae*, 857 F.

Supp. 2d 87 (D.D.C. 2012) at Defs. Mem 6-7 that dismissed constitutional claims against Fannie

Mae and Freddie Mac for lack of governmental action.

| CASE NAME | FHFA PARTY? | CITES HERRON? | OTHER AUTHORITY | LENGTH OF ANALYSIS |
|---|---|---|---|---|
| Mik v. Federal Home Mortg. Corp. | No | No | Lebron, Am. Bankers Mortg. Corp., Syriani (H) | Short |
| Dias v. Fed. Nat'l Mortg. Ass'n | Yes | Yes | Parra (H), Lebron, Syriani (H), Mandry (H) | Medium |
| May v. Wells Fargo Bank | No | Yes | Lebron, Am. Bankers Mortg. Corp. | Medium |
| Syriani v. Freddie Mac Multiclass Certificates | No | Yes | Lebron, Am Bankers, Myers | Medium |
| Garcia v. Fed. Nat'l Mortg. Ass'n Corp. | No | Yes | Shamoon (H), Lopez (H) | Short |
| Colyer v. Fed. Home Loan Mortg. Corp | Yes | No | *Colbert, Mik* | Short |
| Rush v. Fed. Home Loan Mortg. Corp | Intervened | Yes | Lebron, Lopez (H) | Medium |
| Narra v. Fannie Mae | Intervened | No | Lebron, Shamoon (H), *Colbert* | Short |
| Williams v. Fed. Nat'l Mortg. Ass'n | No | No | *Colbert* | Short |
| Johnson v. Fannie Mae | No | No | Ruben (H), Lopez (H), Sutton | Short |
| Hermiz v. Fed. Home Loan Mortg. Corp | Intervened | Yes | Lebron, Kapla (H) | Short |
| Colbert v. Fed. Nat'l Mortg. Ass'n | No | No | Mandry (H), Kapla (H), Rubin (H) | Short |
| Yousif v. Fed. Nat'l Mortg. Ass'n | No | No | Rubin (H) | Short |
| Fannie Mae v. Mandry | 3d. Party Def. | Yes | Lebron, Rubin (H) | Medium |
| Fed. Home Loan Mortg. Corp. v. Gaines | No | Yes | Lebron, Rubin (H) | Short |
| Fed. Home Loan Mortg. Corp. v. Shamoon | No | Yes | Lebron, Lopez (H), Rubin (H) | Medium |
| Fannie Mae v. Manglos | 3d. Party Def. | Yes | Lopez (H) | Short |
| Lopez v. Bank of America | Intervened | Yes | Lebron | Medium |
| Rubin v. Fannie Mae | Intervened | Yes | Lebron, Sutton | Short |
| Kapla v. Fed. Nat'l Mortg. Ass'n | Intervened | Yes | Lebron, Rubin (H), Syriani (H) | Long |

This chart shows the connection between *Herron v. Fannie Mae*, 857 F. Supp. 2d 87 (D.D.C. 2012) and the twenty additional cases that the Defendants used to support their argument that the FHFA's conservatorship does not establish permanent government control over Fannie Mae. The first column lists the case names. The second column shows whether the FHFA was a party in the suit. The third column states whether each case relied on *Herron* to support their decision. The fourth column lists cases in addition to *Herron* that the courts relied on in their decision (and "(H)" next to the case name means that case cited *Herron)* and the fifth column lists the length of the analysis. Short is equivalent to one-three paragraphs, medium is three-five paragraphs, and long is five or more paragraphs.

*Herron* was either directly or indirectly cited in all twenty cases. Thirteen of the cases directly relied on *Herron*; five out of the seven cases that did not directly cite *Herron* relied on cases in which *Herron* was cited. The other two cases, *Colyer v. Fed. Home Loan Mortg. Corp.*, No. 13-10425, 2014 WL 1048009 (E.D. Mich. March 18, 2014) and *Williams v. Fed. Nat'l Mortg. Ass'n*, No. 13-cv-12776, 2013 WL5445883 (E.D. Mich. Sept. 30, 2013), both relied on *Colbert v. Fed. Nat'l Mortg. Ass'n*, No. 12-13844, 2013 WL 1629305 (E.D. Mich Apr. 16, 2013) and *Colbert* relied on three cases that all cited *Herron* as authority.